# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>EDDIE PABLO PAULINO,<br><br>Defendant. | Criminal Case No. 10-00063<br><br>**OPINION AND ORDER RE: MOTION FOR JUDGEMENT OF ACQUITTAL AND MOTION FOR A NEW TRIAL** |

This matter is before the court on the Defendant Eddie Pablo Paulino's Motion for Judgment of Acquittal; Renewed Motion for Judgment of Acquittal; and Motion for a New Trial. Docket No.137. The Defendant asks this court to acquit him, or alternatively to vacate the jury verdict and grant him a new trial. The Defendant contends that the evidence was insufficient to support a conviction for Count IV – Attempted Possession of Methamphetamine Hydrochloride with Intent to Distribute of the Indictment. *See* Docket No. 130. The court disagrees and, for the following reasons, **DENIES** Defendant's Motion.

## I. BACKGROUND

### A. Factual Background[1]

On November 20, 2008, a drug-detector dog alerted to an Express Mail package sent by

---

[1] The following was adduced at trial.

Mark Castro and addressed to "Ba Ba Salas" at P.O. Box 1571 in Hagåtña, Guam. Postal records indicated that the post office box had been taken out by Henry C. Salas, and that Henry J. Salas was an authorized recipient on the box.

On November 21, 2008, law enforcement officers obtained a warrant to search the package. Upon opening and searching the package, they discovered about 109.5 grams of 91.1% pure methamphetamine hydrochloride packaged in an envelope. Law enforcement officers then applied for, and received, a warrant allowing them to install and monitor a beeper/breach-detection device in the package. This device would immediately alert the officers once the package had been opened. Then, having obtained the warrant, they sprayed the envelope with "clue spray," removed the methamphetamine and replaced it with sham, installed the beeper, re-sealed the package, and made a controlled delivery to P.O. Box 1571 in Hagåtña, Guam.

The officers made their controlled delivery of the package early in the morning of November 22, 2008. Later that morning, Geraldine "Gina" Mendiola picked the package up. Mendiola then drove to Shirley's Coffee Shop in Hagåtña, where Henry Salas ("Salas") and Defendant Eddie Paulino (the "Defendant") were waiting. She gave the package to Salas. Having obtained the package, Salas and Defendant left the coffee shop. The Defendant carried the package out.

Salas and Defendant then got into separate vehicles and drove to the Defendant's house in Ipan, Talofofo. The officers followed the men. The officers parked along the street and after about 2 to 5 minutes the beeper-monitoring team advised them that the package had been opened in the vicinity of the Defendant's home.

Having detected the breach, the officers forcibly entered the Defendant's house. As they entered, they saw the Defendant coming out of the bathroom and heard the sound of the toilet flushing. They also saw the Express Mail envelope lying on the living room couch, and the beeper/breach-detection device lying on the floor of the bathroom that Defendant had just left. Both Salas and Defendant were arrested.

*///*

**B. Procedural Background**

On or about October 6, 2010, the Defendant was indicted on fourteen counts: Conspiracy to Distribute Methamphetamine Hydrochloride (Count I) in violation of 21 U.S.C. §§ 841(a)(1), 846 and § 960(c); Conspiracy to Commit Money Laundering (Count II) in violation of 18 U.S.C. §§ 2 and 371; Attempted Possession of Methamphetamine Hydrochloride with Intent to Distribute (Count IV) in violation of 21 U.S.C. § 841(a)(1); and Money Laundering (Counts V-XV) in violation of 18 U.S.C. § 1956 (a)(1)(A)(i). Docket No. 1. The case proceeded to trial on February 9, 2011. At the close of the government's case, the Defendant moved the court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). *See* Docket No. 110. The court found that the evidence was sufficient to sustain a conviction on the counts charged in the indictment and denied the motion. *Id.* At the close of all the evidence, Defendant renewed his motion, which was also denied. *Id*. On February 23, 2011, the jury returned a verdict finding Defendant guilty as to Count IV– Attempted Possession of Methamphetamine Hydrochloride with Intent to Distribute. Docket No. 130. The jury acquitted the Defendant on all of the other charges. *Id.*

## II. DISCUSSION

The Defendant now renews the Motion for Acquittal he made at the close of the government's evidence; renews the Motion for Acquittal he made at the close of all of the trial evidence; and moves this court for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), or in the alternative, a new trial pursuant to Federal Rule of Criminal Procedure 33 (the "Motion"). *See* Docket No. 137.

**A. Judgment of Acquittal**

After the return of a guilty verdict and upon motion of a defendant "the court may set aside the verdict and enter an acquittal" if the "evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(c). To determine whether the evidence is sufficient to sustain a conviction, the court must "construe the evidence 'in the light most favorable to the prosecution,' and only then determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir.

2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Furthermore, the jury's exclusive function is to "determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

In the present motion, the Defendant challenges the sufficiency of the evidence. He argues that there was insufficient evidence presented to the jury to prove he committed– Attempted Possession of Methamphetamine Hydrochloride as stated in Count IV of the Indictment:

> Between November 18, 2008, and November 22, 2008, in the District of Guam, the defendant herein, EDDIE PABLO PAULINO, did unlawfully and knowingly attempt to possess with intent to distribute approximately 109.5 grams net weight of methamphetamine hydrochloride (ice) a Schedule II controlled substance, in violation of Title 18, United States Code, Section 2 and Title 21, United States Code, Section 841(a)(1).

*See* Docket No. 1.

In order for the Defendant to be found guilty of that charge at trial, the court instructed the jury that the government had to show beyond a reasonable doubt, that: (1) the defendant intended to possess 109.5 grams of net weight of methamphetamine hydrochloride with the intent to distribute it to another person; and (2) the defendant did something that was a substantial step toward committing the crime. Docket No. 111, Court's Instruction No. 22.

The definition of "possession" as instructed to the jury provided in relevant part, "[a] person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it." Docket No. 111, Court's Instruction No. 11. The definition of "knowingly" as instructed to the jury provided: "An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider the evidence of the defendant's words, acts, omissions, along with all the other evidence, in deciding whether the defendant acted knowingly." *Id.*, Court's Instruction No. 17.

4

**1. Requisite Knowledge and Intent**

The Defendant argues that the government failed to present evidence showing that he possessed the requisite knowledge and intent to be convicted of the charge of attempted possession with intent to distribute. The Defendant ignores the fact that "[c]ircumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction." *Schad v. Ryan*, 606 F.3d 1022, 1038(9th Cir.2010). In fact, "knowledge must almost always be proved by circumstantial evidence." *United States v. Santos*, 553 U.S. 507, 521 (2008). Likewise, "the government is not required to produce direct evidence of the defendant's intent; rather it may provide circumstantial evidence from which the district court can draw reasonable inferences." *United States v. Santos*, 527 F.3d 1003, 1009 (9th Cir. 2008).

Here, the government presented evidence that the Defendant and government witness Salas had been engaged in drug trafficking. At trial, Salas testified that at the beginning of 2008 the Defendant had recruited him to sell methamphetamine ("ice"). For several months thereafter, the Defendant gave ice to Salas to sell, approximately 10 grams at a time. In the summer of 2008, the Defendant's brother Christopher Paulino ("Christopher") visited Guam from California. Christopher offered to send packages of ice directly to Salas. Salas agreed and the packages were sent to him. Salas then would take these packages to the Defendant's home to open and divide the ice. Salas estimated that he was receiving packages once a month containing between three or four ounces.

> Government: Do you recall about how much ice would be in each package?
>
> Salas: He'd normally send us three, four ounces at a time.
>
> Government: Before the package that led to your arrest, do you remember how many packages you received that had ice in them?
>
> Salas: About five or six; once every month.

Docket No. 139, 28:4-9.

Salas testified that in November 2008 they were expecting another package. On November 22, 2008, Salas testified that he met the Defendant at a local diner– "Shirley's Coffee Shop" in Hagåtña for breakfast. While the men were at the diner, a female relative of

Salas dropped off a package that she had retrieved from the post office. The package had been tracked by the Defendant and was addressed to "Ba Ba Salas." When the two men left the restaurant, they each entered separate vehicles. The Defendant had the package in his possession and drove home to Ipan, Talofofo. Salas followed shortly behind the Defendant. Shortly after the men arrived in Ipan, the Defendant opened the package which triggered the tracking device to alert that the package had been breached. Salas remarked that "it's wired." Salas testified that just seconds later, they heard the agents stomping outside the front door. When the agents broke the door down the Defendant reacted quickly. He leapt over the couch and ran into the bathroom where he flushed the package's contents down the toilet.

Guam Customs and Quarantine Agency Officer Eugene McDonald ("Officer McDonald") testified that after the package alerted, the agents knocked, announced and opened the front door and went into the house. In securing the premises, Officer McDonald observed the Defendant standing at the threshold of the bathroom, the package strewn in the bathroom and heard the water in the toilet running. He then arrested the Defendant and upon examining the Defendant with an ultraviolet light, he found clue spray on the Defendant's hand indicating that he had opened the package.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could find that the Defendant knew a package containing ice had been sent to him via Salas through the post office. Salas's testimony was that he regularly received packages containing ice for the Defendant. To continue their drug trafficking enterprise the men had to rely upon receiving such packages. The evidence supports a finding that the Defendant knew what was in the package, particularly given the urgency of his efforts in disposing of the evidence when the officers knocked and announced their presence at his residence.

"It is the exclusive function of the jury to weigh the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts." *United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977). Here, the jury found there was sufficient evidence to support a conviction on Count IV.

///

**2. Quantity is not an Element of the Offense.**

The Defendant argues that no rational jury could have found beyond a reasonable doubt that he knew that there was **109.5 grams** of net methamphetamine in the package. The court agrees. It is an almost certainty that the Defendant did not know specifically that there was 109.5 net grams of ice in the package. However, for purposes of the charge, it was enough for the government to show that the Defendant attempted to possess whatever the quantity of ice contained in the package, whether it was 10 grams, 100 grams or in this case, 109.5 grams. In other words, the evidence showed that at the moment he took possession of the package, the Defendant believed that it contained ice, and he took possession with the intent to distribute what he received. Regardless of what the actual quantity was in the package, the jury could infer that the Defendant intended to distribute it. *See Ramirez-Rodriquez*, 552 F.2d at 884; *see also United States v. Johnson,* 357 F.3d 980, 984 (9th Cir. 2004) ("A jury can infer intent to distribute from possession of a large quantity of drugs.").

The Government's expert witness, Drug Enforcement Administration senior forensic chemist, Dean Kirby, testified that the parcel contained 109.5 grams net weight of ice. In the absence of evidence that drugs are for personal use, possession of a large quantity can be indicative of intent to distribute. As the Ninth Circuit recognized in *Ramirez* and *Johnson* a jury could reasonably conclude that such a quantity was more than usual for personal use and infer an intent to distribute.

In addition, Officer MacDonald testified that the street value of a gram of ice would be approximately between $800 and $1,000 per gram. From the evidence, it would be reasonable for the jury to infer that the resale value of the ice was $87,600 up to $109,500. "[E]vidence of resale value of drug may support an inference of intent to distribute." *Ramirez-Rodriquez*, 552, F.2d at 884.

The amount of ice seized, coupled with the testimonies of Salas and Officer MacDonald provided relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt, that the Defendant attempted to possess 109.5 grams of ice with the intent to distribute it. Even if the court were to find that there was insufficient evidence to sustain the

jury's finding of quantity, the Defendant would remain convicted of the charge. *See United States v. Thomas*, 355 F.3d 1191, 1198 (9th Cir. 2004) (explaining that a jury determination as to drug quantity is relevant to sentence, not to guilt.) *see, e.g., United States v. Toliver*, 351 F.3d 423, 431 (9th Cir.2003) ("[A]lthough the government failed to prove any of the specific drug quantities or that cocaine base/crack was involved in the conspiracy, the defendants were not entitled to a judgment of acquittal; rather, the district court was restricted in the maximum sentence that it could impose."). While the issue of the quantity of drugs is an appropriate issue for sentencing, it does not provide a basis for judgment of acquittal or new trial.

In *Toliver*, the defendants were charged with conspiracy to distribute cocaine and cocaine base/crack and with attempted possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1). *Toliver*, 351 F.3d at 427. The government specifically alleged the quantity and drug type in the conspiracy count in the superseding indictment but not the attempted possession count. *Id.* The jury returned guilty verdicts on both counts, but could not unanimously determine the quantity and quality of cocaine in the conspriacy count.

The defendants moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, claiming that drug quantity and type were critical elements of the underlying conspiracy offense. "The district court denied the Rule 29 motions, concluding that the convictions for conspiracy and attempt involving an undetermined quantity of cocaine were valid." *Id*. at 428. At sentencing the court imposed a sentence of 168 months for Toliver and 152 months for his co-defendant.

The defendants appealed for several reasons, principally arguing that their convictions and sentences violated the rule of *Apprendi*. *Toliver*, 351 F.3d at 429. The court held that the lack of a finding as to drug quantity was not grounds for acquittal.

> The jury determined that the defendants engaged in a conspiracy and an attempt to possess and distribute an unknown quantity of cocaine, all that is required for conviction under 21 U.S.C. §§ 846, 841(a)(1) and 18 U.S.C. § 2. **The jury's inability to determine the quantity or type of drugs involved in the conspiracy did not justify an acquittal**; it only prevented the district court from imposing a sentence that exceeded 20 years, the maximum allowable sentence under section 841(b)(1)(c) when the offense involves an unknown quantity of drugs.

*Id.* at 430 (emphasis added).

1  Similar to the defendants in *Toliver*, the Defendant here would not be entitled to a
2  judgment of acquittal if the government failed to prove he knew the package contained 50 or
3  more grams of methamphetamine. Rather, the benefit the Defendant would get from such a
4  finding is that he would only be exposed to a lesser sentence.
5  In viewing the evidence in the light most favorable to the government, as required
6  under a Rule 29 motion, the court finds that the government presented evidence such that a jury
7  could find the Defendant committed Attempted Possession of Methamphetamine
8  Hydrochloride as charged in the Indictment. *See Jackson*, 443 U.S. at 319 (holding that in
9  considering a motion for judgment of acquittal, the court must view the evidence presented in
10 the light most favorable to the government).

**B. New Trial**

The Defendant alternatively moves the court for a new trial on the grounds that "there was insufficient evidence to convict Paulino of Count IV. Also, the jury did not unanimously find that the government proved the essential elements of Count IV beyond a reasonable doubt; the jury's guilty verdict was a mistake." Docket No. 137 at p. 10. Pursuant to Federal Rule of Criminal Procedure 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Motions for new trials based on the weight of the evidence are generally disfavored. As discussed in the foregoing, the court finds that the evidence presented at trial was sufficient to sustain the jury's guilty verdict. Thus, the interest of justice does not weigh in favor of a new trial.

## CONCLUSION

The court finds that the government presented evidence sufficient to support a jury's guilty verdict on the charge of Attempted Possession of Methamphetamine Hydrochloride. Accordingly, the court **DENIES** the Defendant's motion as set forth herein.

**IT IS SO ORDERED**.



**/s/ Frances M. Tydingco-Gatewood**
  **Chief Judge**
  **Dated: Mar 31, 2011**